IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| GAIL W.,[1] | ) | Civil Action No. 2:25-04883-RMG-MGB |
|  | ) |  |
| Plaintiff, | ) |  |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
| FRANK BISIGNANO, | ) | **REPORT AND RECOMMENDATION** |
| Commissioner of the Social | ) |  |
| Security Administration, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

Plaintiff Gail W. ("Plaintiff"), proceeding *pro se*, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration (the "Administration") regarding her claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B). For the reasons set forth herein, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED**, and that the case be **REMANDED** for further consideration.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was 55 years old on her date last insured, December 31, 2020. (R. at 126, 131.) Plaintiff claims disability due to disorders of the skeletal spine. (R. at 126, 130, 131, 136.) Plaintiff has past relevant work as a cashier and secretary. (R. at 72.)

---

[1]     The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

Plaintiff filed an application for DIB on October 7, 2022, alleging a disability onset date of January 15, 2017. (R. at 130.) Her application was denied initially and on reconsideration. (R. at 130, 136.) After a hearing before an Administrative Law Judge ("ALJ") on February 12, 2024,[2] the ALJ issued a decision on May 13, 2024, in which the ALJ found that Plaintiff was not disabled. (R. at 64–125.) The Appeals Council declined the request for review, making the ALJ's May 13, 2024 decision the Commissioner's final decision for purposes of judicial review. (R. at 1–7.)

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)     The claimant last met the insured status requirements of the Social Security Act on December 31, 2020.

(2)     The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 15, 2017 through her date last insured of December 31, 2020 (20 CFR 404.1571 *et seq.*).

(3)     Through the date last insured, the claimant had the following severe impairments: lumbar degenerative disc disease and lumbar radiculopathy (20 CFR 404.1520(c)).

(4)     Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(5)     After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) including the ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently. Additionally, the claimant can sit for 6 hours but would need to alternate to standing or walking for 5 minutes after every 90 minutes of sitting continuously, and could stand and/or walk for 6 hours but would need to alternate to sitting for 5 minutes after every 90 minutes of standing or walking continuously. The claimant could frequently use foot and hand controls. The claimant could frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; occasionally balance; frequently stoop, kneel, and crouch; and occasionally crawl. The claimant

---

[2]     Plaintiff was represented by counsel at the hearing. (R. at 79–125.)

(6) Through the date last insured, the claimant was capable of performing past relevant work as a cashier. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

(7) The claimant was not under a disability, as defined in the Social Security Act, at any time from January 15, 2017, the alleged onset date, through December 31, 2020, the date last insured (20 CFR 404.1520(f)).

(R. at 67–73.)

## APPLICABLE LAW

### I.    Relevant Statutory Law

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq.* "Disability" is defined in the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB context); 42 U.S.C. § 1382c(a)(3)(A) (SSI context).[3]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social

---

[3]    "[T]he definition of disability is the same under both DIB and SSI . . . ." *Morgan v. Saul*, 9:19-cv-1390-BHH-BM, 2020 WL 3318630, at *1 n.1 (D.S.C. June 3, 2020) (citing *Emberlin v. Astrue*, No. 06-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

Security Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him or her from doing substantial gainful employment. 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context).

The claimant bears the burden of proof with respect to the first four steps of the analysis. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Once the claimant has established an inability to return to past relevant work, the burden shifts to the Commissioner to show that the claimant—considering age, education, work experience, and residual functional capacity—can perform alternative jobs and that such jobs exist in the national economy. SSR 82-62, 1982 WL 31386, at *3; *Grant*, 699 F.2d at 191; *Pass*, 65 F.3d at 1203; *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016).

## II.     Standard of Review

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the Commissioner supported his findings with substantial evidence and applied the correct law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a de novo review of the evidence and requires that the court uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340

(4th Cir. 2012); *Mascio*, 780 F.3d at 640; *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021); 42 U.S.C. § 405(g).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Dowling*, 986 F.3d at 383 (citing *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). It is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson*, 810 F.3d at 207 (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). In reviewing for substantial evidence, the court does not undertake to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hancock*, 667 F.3d at 472; *Arakas*, 983 F.3d at 95; *Dowling*, 986 F.3d at 383. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the reviewing court must defer to the ALJ's decision. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (citing *Hancock*, 667 F.3d at 472).

However, the court does not "reflexively rubber-stamp an ALJ's findings." *Dowling*, 986 F.3d at 383 (citing *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017)). An ALJ may not cherry-pick, misstate, or mischaracterize material facts. *Arakas*, 983 F.3d at 99 (citing *Lewis*, 858 F.3d at 869). Rather, ALJs "must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quoting *Monroe*, 826 F.3d at 189).

## **DISCUSSION**

Plaintiff contends that the ALJ's decision should be reversed because the ALJ erred in: (1) failing to properly evaluate and weigh the medical evidence; (2) ignoring objective findings from acceptable medical and chiropractic sources; (3) misapplying the legal standards governing onset and severity; and (4) improperly discounting Plaintiff's credibility and functional limitations. (Dkt. No. 17 at 5.) In addition, Plaintiff claims that she has obtained new and material medical evidence,

5

warranting remand. (*Id*.) Specifically, Plaintiff explains that "[a]fter the ALJ hearing, [she] was evaluated by Dr. James F. Bethea, M.D., on September 9, 2025." (*Id*.) Following a review of Plaintiff's full medical history and current condition, Dr. Bethea concluded that Plaintiff was not capable of any gainful employment. (*Id*.) Because this evaluation was not available at the time of the hearing, Plaintiff believes it "constitutes new and material evidence under 42 U.S.C. § 405(g), Sentence Six." (*Id*.)[4]

In response, the Commissioner contends that Plaintiff simply "did not meet her burden of proving that she was disabled," and that the ALJ appropriately "accounted for all Plaintiff's credibly established functional limitations," supporting his decision with substantial evidence. (Dkt. No. 19 at 1, 6.) The Commissioner also contends that Plaintiff's "attempt[] to seek remand based on evidence submitted for the first time to the district court," is futile because she cannot "[meet] her burden of demonstrating the new evidence met the materiality requirement warranting remand." (*Id*. at 8–9.)

For the reasons explained below, the undersigned agrees with Plaintiff's assertion that the ALJ improperly discounted her subjective complaints of pain and severity when making his residual functional capacity ("RFC") finding. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED**, and that the case be **REMANDED** for further consideration of this point.

---

[4]     Plaintiff has submitted a copy of Dr. Bethea's opinion to the Court, along with photos of her back "showing surgical scars and implanted spinal hardware." (Dkt. No. 17 at 6; *see also* Dkt. Nos. 17-1, 17-2.) According to Plaintiff, "[t]hese exhibits provide clear visual and medical proof of the extensive and permanent nature of [her] spinal impairment." (Dkt. No. 17 at 7.) The undersigned notes that this evidence does not appear to relate to the relevant period, and was submitted to the Court in the first instance. (R. at 2; *see also* Dkt. Nos. 17-1, 17-2.)

### I.    Legal Standard

A claimant's RFC represents the most she can still do despite her limitations. *Ladda v. Berryhill*, 749 F. App'x 166, 172 (4th Cir. 2018). The ALJ is responsible for determining the RFC and must consider all of the relevant medical and other evidence in the record when doing so. *See* 20 C.F.R. §§ 404.1545, 404.1546 (DIB context); 20 C.F.R. §§ 416.945, 416.946 (SSI context). Specific to considering a plaintiff's subjective complaints, the ALJ must follow a two-step process. *Craig*, 76 F.3d at 594 ("[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process."). First, there must "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation omitted). Next, the ALJ must expressly consider "the intensity and persistence of the claimant's [symptoms] and the extent to which it affects her ability to work." *Id*. In making these determinations, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10.

A plaintiff's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." *Craig*, 76 F.3d at 595. An ALJ should consider the following relevant factors when evaluating subjective complaints: (1) the plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or

has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the plaintiff receives or has received for relief of pain or other symptoms; (6) any measures the plaintiff uses or has used to relieve pain or other symptoms (*e.g.*, lying flat, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning the plaintiff's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 404.1529(c).

## II.      ALJ's RFC Determination

As noted above, the ALJ here found that Plaintiff was capable of performing medium work during the relevant period, with certain limitations. (R. at 68.) In justifying this finding, the ALJ first summarized Plaintiff's hearing testimony regarding her alleged limitations during the relevant period, and the subsequent period leading up to the hearing date. (R. at 69–70.) Specifically, the ALJ recounted:

> The claimant alleges disability based upon physical impairments. She notes experiencing difficulty sitting and standing during the relevant period, with pain in her low back radiating into her legs (Hearing Testimony). She reports difficulty preparing meals, doing chores, and bending (Hearing Testimony). The claimant also reports needing to take breaks and recline on the couch with her feet up (Hearing Testimony). She additionally notes trouble lifting (Hearing Testimony). She reports using a back brace and trouble driving/sitting in a car (Hearing Testimony). The claimant reports undergoing surgery in 2022 and 2023 with continued pain (Hearing Testimony). . . .
>
> The claimant reports she was able to shop in stores and maintain her own personal care during the relevant period (Hearing Testimony). She also reported caring for her husband and mother-in-law (Hearing Testimony).

(R. at 69–70.) The ALJ continued on to explain that he found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but such symptoms were not "sufficiently consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision so as to warrant a more restrictive residual functional capacity." (R. at 69.) As support for this conclusion, the ALJ explained:

8

The relevant medical evidence of record generally does not support the claimant's alleged limitations prior to the date last insured. Although the claimant alleges an onset date of early 2017, the record contains no treatment notes or other medical evidence related to the years 2017, 2018, or 2019, and no related evidence in the first half of 2020. In mid-2020, the claimant sought care for low back pain, indicating it started on that day (1F/5). She noted a history of chiropractic care, noting her last adjustment was approximately three years prior (1F/6). A chiropractic adjustment was performed and the claimant noted no numbness or radiculopathy afterwards (1F/9-10). Diagnoses of sciatica, segmental and somatic dysfunction of the thoracic region, and segmental and somatic dysfunction of the cervical region were noted (1F/9). It appears the claimant continued chiropractic care in June 2020 and then treated once every other month through October 2020 (1F/11-20). The record contains no further evidence of treatment in 2020 and no evidence of imaging during the relevant period prior to the date last insured.

Nonetheless, the claimant again reported low back issues in early 2021 reporting a fall (2F/8). She appears to have received additional chiropractic care in the spring of 2021 and underwent imaging in the summer of 2022 (1F/21-26). She again reported lower back pain several days later (2F/10). That fall, the claimant reported low back pain and dysesthesias into her left foot (3F/24, 27). Imaging noted degenerative disc disease of the lumbar spine with disc extrusion and stenosis (3F/20-23). The claimant underwent lumbar spinal surgery and fusion in late 2022, and by the spring of 2023 she was noted to be doing well (3F/5-19; 5F/18-20). However, she subsequently presented with back pain and discomfort into her hips in mid-2023 (3F/2; 6F/95). Imaging noted disc herniation below her previous fusion, and she treated with epidural steroid injection (5F/5; 6F/54-56, 58-59, 67, 95; 7F/33). She also treated with medication, and she later underwent additional surgery in the form of a [hemilaminectomy] revision with excision of bilateral herniated nucleus pulposus at L5-S1 (5F/7-8; 7F/5, 7). No significant post-operative physical examination findings were noted (6F/19, 30; 7F/21, 24). Although the claimant reported pain down her leg in early 2024, no significant physical examination findings were noted, with no obvious re-herniation noted on imaging (6F/4, 13; 7F/18). She treated with medication (7F/2). However, as noted, this is subsequent to her date last insured.

The undersigned in giving every reasonable benefit of the doubt does find the reports of pain prior to the date last insured coupled with the course of treatment subsequent to the date last insured is sufficient to find severe impairments prior to the date last insured. However, even considering the need to care for family and other competing priorities, treatment prior to and shortly after the date last insured is so minimal and sporadic as to prevent finding greater functional limitations. . . .

Given the evidence of record during the relevant period, the undersigned has limited the claimant to medium work with sitting for 6 hours with the need to alternate to sitting for 5 minutes after every 90 minutes of sitting continuously; standing and/or walking 6 hours with the need to alternate to sitting for 5 minutes after every 90

9

minutes of standing or walking continuously; frequent use of foot and hand controls; frequent climbing ramps and stairs; occasional climbing of ladders, ropes, or scaffolds; occasional balancing; frequent stooping, kneeling, and crouching; occasional crawling; occasional work at unprotected heights; frequent working near moving mechanical parts, and frequent exposure to vibration, but finds no further limitations warranted by the evidence of record prior to the date last insured.

(R. at 69–70.) As additional support, the ALJ explained that he "fully considered the medical opinions and prior administrative medical findings," but did not find them persuasive. (R. at 70.)

The ALJ concluded by reiterating his overall findings, stating:

> After reviewing all of the evidence, the undersigned concludes that the claimant was able to perform medium work with the need to alternate sitting and standing every 90 minutes for 5 minutes at a time as well as postural, environmental, and other exertional limitations resulting from her severe impairments. As outlined above, the evidence of record simply does not support the claimant's alleged level of incapacity and does not support greater limitations. Although the claimant alleges an onset date of early 2017, the record contains no indication of treatment or care until mid-2020. The claimant sought chiropractic care at that time for her back, and participated in the same in June, August, and October of that year. However, the record contains no further evidence during the relevant period. While the claimant continued to report back pain, treating with medication, injections, and eventually two surgeries, these occurred well subsequent to the date last insured, with no significant physical examination findings noted (1F-3F; 5F-7F). To accommodate the claimant's physical impairments and related symptoms prior to the date last insured, the undersigned limited her to medium work with sitting for 6 hours with the need to alternate to standing or walking for 5 minutes after every 90 minutes of sitting continuously; standing and/or walking 6 hours with the need to alternate to sitting for 5 minutes after every 90 minutes of standing or walking continuously; frequent use of foot and hand controls; frequent climbing ramps and stairs; occasional climbing of ladders, ropes, or scaffolds; occasional balancing; frequent stooping, kneeling, and crouching; occasional crawling; occasional work at unprotected heights; frequent working near moving mechanical parts, and frequent exposure to vibration. The claimant reports she was able to shop in stores, maintain her own personal care, and care for her mother-in-law and husband during the relevant period (Hearing Testimony). As such, while the undersigned acknowledges that the claimant had some limitations in performing other activities of daily living, and while none of the claimant's activities of daily living are dispositive, taken together and considered in conjunction with the medical evidence of record, they suggest that the claimant was capable of performing work within the above parameters on a sustained and continuous basis. The record simply does not support any greater limitations than those outlined above.

(R. at 71.)

10

### III.    Analysis

Upon careful review, the undersigned finds that the ALJ contravened Social Security Ruling 16-3p ("SSR 16-3p") by improperly relying on Plaintiff's lack of treatment during and immediately following the relevant period to discount the severity of her impairments without adequately considering Plaintiff's ability to afford such treatment. Indeed, the ALJ's RFC determination, recounted in detail above, clearly relied in large part on the lack of objective medical evidence substantiating Plaintiff's subjective complaints of severe pain and limitations during the relevant period. (R. at 69–71.) However, the ALJ's decision makes absolutely no mention of Plaintiff's alleged inability to afford treatment at that time. (R. at 64–74.)

At the hearing, the ALJ recognized that Plaintiff complained of "some pretty serious back pain" in late 2020 and asked Plaintiff why she did not "aggressively follow[] up" regarding treatment for such pain until July 2022. (R. at 91–92.) In response, Plaintiff stated: "[B]ecause of financial hardship. I didn't have insurance, and I was having to pay out of pocket . . . ." (R. at 92.) The hearing transcript further reveals that Plaintiff's husband was on disability at that time, so their income was more or less limited to his disability benefits. (R. at 93.) Although Plaintiff's husband had Medicaid at that time, Plaintiff did not have any health insurance at all. (R. at 93.) Plaintiff testified that she was limited to obtaining care only when and where she could afford it, thus resulting in limited medical records corroborating her complaints of pain between 2020 and 2022. (R. at 93–94.)

The ALJ's failure to mention this testimony constitutes reversible error where, as here, the record indicates that Plaintiff's inability to afford treatment impacted the level of medical care she received for her severe impairments, and the ALJ used such lack of treatment as a basis on which to determine Plaintiff was not disabled. Courts routinely find remand is warranted under these

circumstances. *See*, *e.g.*, *Thomas v. Colvin*, No. 6:15-cv-3251-MBS-KFM, 2016 WL 5109199, *10 (D.S.C. Aug. 24, 2016) ("Courts in this district have consistently found remand necessary where the ALJ considered the claimant's failure to seek treatment in the disability determination despite evidence in the record of the claimant's inability to afford treatment.") (collecting cases).

What is more, the ALJ's decision to omit this testimony from his decision indicates that he did not comply with SSR 16-3p. SSR 16-3p requires an ALJ to consider a claimant's ability to access free or low-cost medical services before discounting the impact of a claimant's symptoms on his or her ability to work. SSR 16-3P, 2017 WL 5180304, at *9–10 (Oct. 25, 2017). Here, the ALJ did not explain why he found Plaintiff's attempts to access free or low-cost medical services insufficient—to the contrary, he did not mention Plaintiff's attempts to access free or low-cost medical services at all. (R. at 64–74.) Thus, the decision does not make clear that the ALJ properly considered Plaintiff's access (or lack thereof) to free or low-cost services. *See*, *e.g.*, *Amanda G. v. O'Malley*, No. 2:23-cv-02228-DCC-MGB, 2024 WL 3432181, at *9 (D.S.C. June 18, 2024) (noting that ALJ's failure to discuss hearing testimony on the issue of whether the plaintiff's limited treatment was the result of inability to pay indicated ALJ gave no consideration to the issue), *adopted sub nom. Gilmer v. Comm'r of Soc. Sec. Admin.*, 2024 WL 3429788 (D.S.C. July 15, 2024); *Brownlee–Nobs v. Colvin*, No. 1:14-cv-03988, 2015 WL 5908524, at *14 (D.S.C. Oct. 7, 2015) (remanding where ALJ "failed to make specific findings regarding the resources available to Plaintiff and whether her failure to seek additional treatment and medication was based upon her inability to pay").

Further, courts in this circuit have held that "an ALJ is required to develop the record as to whether a claimant's lack of resources contributed to the failure to seek or maintain care when the ALJ bases any or part of a denial of disability benefits on a failure to seek or maintain care."

12

*Michael C. v. Kijakazi*, No. 22-cv-0029-BAH, 2022 WL 13945281, at *5 (D. Md. Oct. 24 2022); *see also Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (noting the ALJ "has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record and cannot rely on the evidence submitted by the claimant when that evidence is inadequate"). Here, the ALJ's decision does not reflect any attempt to do so, despite the fact that the ALJ discounted the severity of Plaintiff's lumbar impairments during the relevant period primarily because the record did not contain sufficient corroborating medical evidence. (R. at 64–74.)

Ultimately, "[a] claimant may not be penalized for failing to seek treatment she cannot afford." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (holding that the ALJ erred in determining that the plaintiff's impairment was not severe based on her failure to seek treatment where the record reflected that she could not afford treatment); *see also Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him"). "As a result, an ALJ should not discount a claimant's subjective complaints on the basis of her failure to seek medical treatment when she has asserted—and the record does not contradict— that she could not afford such treatment." *Dozier v. Colvin*, 2015 WL 4726949, *3 (D.S.C. Aug. 10, 2015) (citing *Lovejoy*, 790 F.2d at 1117). Because the ALJ improperly penalized Plaintiff for failing to seek treatment she could not afford by discounting her subjective complaints of pain based on lack of record evidence corroborating the same during the relevant period, the undersigned **RECOMMENDS** that the Commissioner's decision must be **REVERSED**, and the case **REMANDED** for further consideration of this issue.

## IV.     Remaining Allegations of Error

As mentioned above, Plaintiff also argues that remand is necessary because the ALJ failed to appropriately evaluate and weigh the medical evidence, consider objective findings from medical sources, and apply legal standards governing onset and severity, and because she submitted new and material evidence to this Court for review. (*See generally* Dkt. No. 17.) The undersigned need not address these remaining allegations, as they may be rendered moot on remand. As part of the overall reconsideration of the claim upon remand, the ALJ should, if necessary, also take into consideration these additional allegations of error raised by Plaintiff and, to the extent it is properly submitted for the ALJ's review, consider Plaintiff's purportedly new and material evidence.

## CONCLUSION

For the reasons set forth above, the undersigned finds that the Commissioner's decision should be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g), and that the case should be **REMANDED** for a new hearing consistent with this Report and Recommendation.

**IT IS SO RECOMMENDED**.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 9, 2026
Charleston, South Carolina

14

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).